IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on briefs April 13, 2021

## STATE OF TENNESSEE v. WILLIAM DARNELL RICHARDSON

**Appeal from the Circuit Court for Lawrence County**
**No. 35421    Stella Hargrove, Judge**

_____

### No. M2020-00286-CCA-R3-CD

_____

The defendant, William Darnell Richardson, appeals his Lawrence County Circuit Court jury convictions of possession of 0.5 grams or more of a Schedule II controlled substance with intent to sell, simple possession of a Schedule IV controlled substance, possession of drug paraphernalia, and driving on a revoked or suspended license, arguing that he is entitled to plain error relief for inappropriate and prejudicial statements made by the prosecutor during closing arguments, that the trial court erred by admitting evidence contravening the rules of hearsay, and that the evidence was insufficient to support his conviction of possession of 0.5 grams or more of methamphetamine with intent to sell. Because the trial court erred by admitting certain hearsay evidence, we reverse the defendant's conviction for simple possession of Alprazolam and remand for a new trial on that charge. Because the evidence was insufficient to sustain the defendant's conviction of driving on a revoked or suspended license, we vacate that conviction and dismiss that charge. We affirm the defendant's conviction of possession of methamphetamine with intent to sell and find no plain error in the prosecutor's closing argument.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed in Part; Reversed and Remanded in Part; and Vacated and Dismissed in Part.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Brandon E. White, Columbia, Tennessee (on appeal); William M. Harris, Assistant District Public Defender (at trial), for appellant, William Darnell Richardson.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Brent Cooper, District Attorney General; and Gary Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

In November 2018, the Lawrence County Grand Jury charged the defendant with one count each of possession of 0.5 grams or more of methamphetamine, a Schedule II controlled substance, with intent to sell; possession of Alprazolam, a Schedule IV controlled substance; possession of drug paraphernalia; and driving on a revoked or suspended license.[1]

At the two-day, July 2019 trial, Deputy Colton Steadman of the Lawrence County Sheriff's Department testified that on May 10, 2018, at approximately 1:00 a.m., he observed a vehicle driving eastbound on Pulaski Highway that did not have an operational light illuminating the license plate. He followed the vehicle and "ran the tag through our central dispatch" and learned that the license plate was registered to the defendant and Misty Richardson. Deputy Steadman said that he knew that the defendant "had an active child support warrant out of our county," which information he learned from "look[ing] at the warrants every day whenever I come on shift." He effectuated a traffic stop and approached the vehicle and recognized the defendant as the driver. Misty Richardson was seated in the front passenger seat, and Billy Richardson, the defendant's father, was seated in the back seat.

Deputy Steadman asked the defendant to exit his vehicle and showed him where a light illuminating the license plate should have been. From his patrol vehicle, Deputy Steadman checked the defendant's driver's license and confirmed that the defendant had an outstanding warrant. Deputy Steadman took the defendant into custody for the outstanding warrant and asked permission to search the vehicle, which the defendant denied. Deputy Steadman said that he had already requested assistance from Deputy Jason Jantke before he asked the defendant for consent to search, and Deputy Jantke was en route with his K-9 drug dog, Kilo. Deputy Steadman explained that Kilo was "trained to alert or sniff out methamphetamine, cocaine, and heroin[]." When Deputy Jantke arrived, he had Kilo sniff around the vehicle, and Deputy Jantke advised Deputy Steadman that "Kilo had alerted on the vehicle," meaning that he had "caught the scent of an illegal narcotic . . . inside the vehicle or coming from the vehicle." Deputy Josh Watson and Corporal Eric Caperton also arrived and helped Deputy Steadman search the vehicle. They recovered "two glass pipes containing crystal residue," an Altoids tin with "seven Alprazolam pills," and an unlabeled pill bottle containing "crystal substances in two separate baggies." The officers believed the crystal substances to be methamphetamine.

---

[1] The Grand Jury also charged the defendant with one count each of driving without a tag light and violation of the financial responsibility law. Although no order dismissing these charges is included in the record, the record indicates that these charges were dismissed, and the jury did not consider these charges at trial.

Deputy Steadman explained that he received 80 hours of training on "controlled substances and paraphernalia that may be found in vehicles" during his time at the Tennessee Law Enforcement Training Academy. Deputy Steadman described the pills found in the Altoids tin as "green, oval pills" with the marking "S902" on them. He said that the Lawrence County Sheriff's Department had trained him to use the website pillidentifier.com to identify pills. In this case, he searched the website by the color, shape, and marking on the pills, and the website returned a result of a picture of the pill, which picture he printed out. Based on his search of pillidentifier.com, Deputy Steadman identified the pills as Alprazolam.

Deputy Steadman testified that one of the glass pipes had a white crystal residue in its globe, which he said was "the crystal that builds up" "when somebody smokes methamphetamine out of it." The second glass pipe was broken. Deputy Steadman said that the two baggies found in the pill bottle contained a total of 4.15 grams of a crystal substance but that one of the baggies contained more of the substance than the other, which indicated to him that "[o]ne bag could have already been weighed out for sale and the other bag just hasn't been cut out yet." He explained that by "cut out" he meant "weighed out in a separate baggy on a set of scales for resale." He said that in his experience, methamphetamine users typically smoked "half a gram, a little more, maybe" of methamphetamine in a glass pipe at a time.

Deputy Steadman said that he provided the defendant with *Miranda* warnings and that the defendant indicated that he wished to waive those rights. The defendant asked Deputy Steadman whether his father would go to jail if the defendant "took possession" of the contraband, and Deputy Steadman "advised [the defendant] that I didn't want him to claim anything that was not his." The defendant twice "informed me that he would take possession of those items because he was already going to jail," and Deputy Steadman repeatedly told the defendant "I did not want him to take any claim of anything that was not his." Ultimately, the defendant "did say that it was his illegal items in the vehicle." Deputy Steadman said that during a search of the defendant's person, he recovered six $100 bills from his wallet.

During cross-examination, Deputy Steadman testified that one of the glass pipes was broken when officers found it. He said that when smoking methamphetamine with a glass pipe, the user "[n]ormally" used "a torch light" and acknowledged that the defendant had a torch lighter in his pocket. He also said that when selling methamphetamine, a dealer would use a scale to weigh the product and acknowledged that he did not find any scale in the defendant's vehicle. He acknowledged that it was possible that the two baggies of methamphetamine recovered from the vehicle had been sold to the defendant. Deputy Steadman said that he did not ask the defendant where he had gotten the six $100 bills.

Deputy Steadman acknowledged that the amount of methamphetamine typical for personal use varied depending on what the user was "immune to." He said that the amount of methamphetamine found in the defendant's vehicle was "a substantial amount for personal use" but acknowledged that it was possible that some people used much more than others.

On redirect examination, Deputy Steadman testified that none of the occupants of the vehicle appeared to be under the influence of drugs.

On recross-examination, Deputy Steadman acknowledged that he did not ask any of the occupants to submit to a blood test to determine whether they had recently used methamphetamine.

Tennessee Bureau of Investigation ("TBI") Special Agent Lela Jackson testified as an expert in forensic chemistry. In this case, she tested "[t]wo baggies containing a clear crystal substance." One bag contained 3.05 grams of a substance that she determined "contained methamphetamine," and the second bag weighed 0.83 grams. She said that the scales used in the laboratory are more accurate than the digital scales that police officers use in the field. Agent Jackson's report was exhibited to her testimony.

During cross-examination, Agent Jackson testified that the weights that she reported for the crystalline substance included the weight of the bag and that she did not weigh the substances separate from the bags. She explained that it was the policy of the laboratory to not weigh methamphetamine separate from the bag unless the weight registered as less than 0.5 grams or 26 grams or more. She acknowledged that she did not test the substance in the smaller bag because "it looked similar to the other one" but said that if it had looked different, she would have tested it.

The State rested. After a full *Momon* colloquy, the defendant elected not to testify, but he did put on proof.

Shakeya Richardson, the defendant's daughter, testified that her grandmother passed away in April 2018 and that "I paid for half of her funeral because she did not have life insurance and my grandfather did not have money." She said that she agreed to loan her grandfather $600 from her savings to help pay for the funeral and that her grandfather was to repay the loan after selling a house in Mount Pleasant. Ms. Richardson said that the house sold around the time that the defendant was arrested and that her grandfather had given the defendant money to repay the loan.

During cross-examination, Ms. Richardson testified that her father worked

-4-

every other week on her farm, "clean[ing] our stalls" for $50. She was unaware of any other source of income for the defendant.

The defendant rested.

The jury accredited the State's evidence and convicted the defendant as charged. The trial court imposed an effective sentence of 12-years' incarceration. Following a timely but unsuccessful motion for a new trial, the defendant filed a timely notice of appeal.

In this appeal, the defendant argues that he is entitled to plain error relief for instances of prosecutorial misconduct, that the trial court erred by admitting hearsay evidence, and that the evidence is insufficient to support his conviction of possession of 0.5 grams or more of methamphetamine with intent to sell.

## I. Prosecutorial Misconduct

The defendant asserts that the prosecutor made inappropriate comments during closing argument. Specifically, he argues that the prosecutor committed misconduct by inflaming and confusing the jury by mentioning the prosecutor's granddaughter, inappropriately suggesting that the defendant possessed Alprazolam for the purpose of resale, erroneously shifting the burden to the defendant by pointing out that the defendant failed to call certain witnesses, and imposing his personal beliefs about the case.

"While the scope and depth of closing argument is generally a matter within the trial court's discretion, the State is not free to do what they wish," *State v. Jones*, 568 S.W.3d 101, 145 (Tenn. 2019) (citation omitted), and judges must take care to restrict improper argument, *see State v. Hill*, 333 S.W.3d 106, 130-31 (Tenn. Crim. App. 2010) (citation omitted). Because of the State's unique role in a criminal case, the State, in particular, "must refrain from argument designed to inflame the jury and should restrict its commentary to matters in evidence or issues at trial." *Hill*, 333 S.W.3d at 131. Our supreme court

> has recognized five general areas of potential prosecutorial misconduct during closing arguments: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or opinions as to the truth or falsity of any testimony or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the accused; and (5) arguing or

-5-

referring to facts outside the record unless the facts are matters of common knowledge.

*Jones*, 568 S.W.3d at 145 (citing *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003)).

During closing argument, the prosecutor made the following statements with which the defendant takes issue:

> I submit to you [the defendant] was on a mission. . . .
>
> . . . .
>
> What other factors can you consider? The Altoids can with the seven Alprazolam pills in it. Not in a prescription bottle. You heard no proof that [the defendant], or indeed any of three the [sic] people in that car, had any sort of condition that required them to take Alprazolam, anxiety or depression, or whatever that stuff is for.
>
> If somebody in that car, [the defendant's] wife, [the defendant's] father, was on Alprazolam, don't you think they would have taken the stand and said so?
>
> Sometimes drug dealers specialize but sometimes they try to have a little bit of something for everybody. He had more than one kind of drug. That's evidence in which you can draw the inference that he was possessing these items for resale.
>
> . . . .
>
> So he had his own little mini pharmacy here. He could sell you some methamphetamine; he could sell you some Alprazolam.
>
> . . . .
>
> Here's the interesting thing about the Altoids can . . . . Isn't it cute, it's *Frozen*. My granddaughter loves that. I'm glad she didn't find the Altoids can here though.

Look at the can and it's [sic] contents. It's an awfully big can for seven pills. Wonder if there were more than seven at one time?

The defendant acknowledges that he failed to lodge a contemporaneous objection to the prosecutor's alleged improper statements and argues that he is entitled to plain error relief.

This court may, "[w]hen necessary to do substantial justice, . . . consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial." Tenn. R. App. P. 36(b). This court will grant relief for plain error only when:

> the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it "probably changed the outcome of the trial."

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (quoting *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). The party claiming plain error bears the burden of satisfying all five criteria as a prerequisite to plain error review. *See id.* Because each factor must be established, we need not consider all five factors when a single factor indicates that relief is not warranted. *State v. Fayne*, 451 S.W.3d 362, 372 (Tenn. 2014) (citing *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007)). "[A]n error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Fayne*, 451 S.W.3d at 372 (citation omitted) (alterations in *Fayne*).

We easily conclude that the defendant has satisfied the first element for plain error relief; the transcript of the State's closing argument is included in the record and clearly establishes what occurred in the trial court. The defendant has failed, however, to establish that the prosecutor's statements breached a clear and unequivocal rule of law. Although the one reference to the prosecutor's granddaughter's liking *Frozen* was inappropriate, it is unlikely that the comment would inflame the passions of the jury or confuse them so as to cause them to convict the defendant on the belief that his conduct endangered children. Additionally, the law specifically permitted the jury to infer that the defendant possessed the methamphetamine with the intent to sell it based on the circumstances of the arrest. *See* T.C.A. § 39-17-419 ("It may be inferred from the amount

-7-

of a controlled substance or substances possessed by an offender, *along with other relevant facts surrounding the arrest*, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." (emphasis added)).  Although the defendant was not charged with possession of Alprazolam with intent to sell, the jury was free to infer his intent to sell the methamphetamine from the fact that he also possessed Alprazolam.  Consequently, the prosecutor's argument that the defendant's possession of Alprazolam made it more likely that he possessed the methamphetamine for resale were not inappropriate.

Moreover, because a prosecutor's prefacing of an argument with the phrase "I submit" "does not necessarily indicate an expression of personal opinion," no clear rule of law was breached.  *See State v. Gann* 251 S.W.3d 446, 460 (Tenn. Crim. App. 2007) (citing *United States v. Stulga*, 584 F.2d 142, 147 (6th Cir. 1978)).  Similarly, because there are instances in which a prosecutor may appropriately comment upon a defendant's failure to call certain witnesses, *see State v. Francis*, 669 S.W.2d 85, 88 (Tenn. 1984) ("It is well-established that a prosecutor may comment upon the failure of a defendant to call an available and material witness whose testimony would ordinarily be expected to favor the defendant." (citations omitted)), the prosecutor did not breach a clear rule of law by suggesting that the defendant could have called Misty Richardson or Mr. Richardson.

Consequently, the defendant has failed to establish that he is entitled to plain error relief in this matter.

## II.  Hearsay

Next, the defendant argues that the trial court erred by permitting Deputy Steadman to testify that he relied on the website pillidentifier.com to identify the seven pills in the Altoids tin as Alprazolam because the State failed to lay a proper foundation for Deputy Steadman's identification of the pills and show that pillidentifier.com "is a reliable source for identifying scheduled/controlled substances" and because the information found on pillidentifier.com constituted inadmissible hearsay.  The State contends that Deputy Steadman's testimony as to the pills being Alprazolam was admissible as an exception to hearsay.  We agree with the defendant.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c).  "Hearsay is not admissible except as provided by these rules or otherwise by law."  *Id.* 802.  Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

Our supreme court has confirmed that "[t]he standard of review for rulings

-8-

on hearsay evidence has multiple layers." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). The "factual and credibility findings" made by the trial court when considering whether a statement is hearsay, "are binding on a reviewing court unless the evidence in the record preponderates against them." *Id.* (citing *State v. Gilley*, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). "Once the trial court has made its factual findings, the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one [of] the exceptions to the hearsay rule—are questions of law subject to de novo review." *Kendrick*, 454 S.W.3d at 479 (citing *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); *Keisling v. Keisling*, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005)); *see also Gilley*, 297 S.W.3d at 760 (stating that because "[n]o factual issue attends" the trial court's determination whether a statement is hearsay, "it necessarily is a question of law"). "If a statement is hearsay, but does not fit one of the exceptions, it is inadmissible, and the court must exclude the statement. But if a hearsay statement does fit under one of the exceptions, the trial court may not use the hearsay rule to suppress the statement." *Kendrick*, 454 S.W.3d at 479; *see also Gilley*, 297 S.W.3d at 760-61.

The State relies on Rule of Evidence 803(17) to argue that the challenged testimony was admissible hearsay, which rule allows admission of "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." Tenn. R. Evid. 803(17).

Here, Deputy Steadman did not testify as an expert in illegal substances. As a lay witness, he was free to testify to matters within his personal knowledge, *see* Tenn. R. Evid. 602, and to offer his opinion or draw inferences if "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness's testimony or determination of a fact in issue," *see id.* 701(a). Deputy Steadman's testimony that he searched pillidentifier.com and the results of that search led him to conclude that the pills found in the Altoids tin were Alprazolam is outside the purview of a lay witness. Deputy Steadman's personal knowledge did not extend to the identification of the pills and his opinion as to their identity was not based on his own perception.

Furthermore, Deputy Steadman's testifying that he identified the pills based on the search results from pillidentifier.com is hearsay that does not fall within an exception. The hearsay exception on which the State relies extends only to the market reports or commercial publications themselves. *Compare* Tenn. R. Evid. 803(16) (excepting from hearsay "*[s]tatements in a document* in existence thirty years or more purporting to establish or affect an interest in property" (emphasis added)), *with id.* 803(17) (making no reference to *statements in* market reports or commercial publications). Because the State failed to produce the publication itself, Deputy Steadman's testimony that he identified the pills as Alprazolam based on the search results found on pillidentifier.com constituted hearsay that did not fall within any exception and was inadmissible. We need

not reach the issue whether the website generated reliable information.

Because the improperly admitted testimony was the only evidence that the pills in the Altoids tin were Alprazolam, the error was not harmless, and the defendant's conviction for simple possession of Alprazolam cannot stand. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."); *State v. Brown*, 915 S.W.2d 3 (Tenn. Crim. App. 1995) ("We will reverse a conviction only if it affirmatively appears from the record that the error more probably than not affected the judgment.") (citation omitted). Accordingly, we reverse the defendant's conviction of possession of Alprazolam and remand the case to the trial court for a new trial on that charge.

### III. Sufficiency of the Evidence

The defendant contends that the State failed to establish that he possessed the methamphetamine with the intent to sell it.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As relevant to this case, "It is an offense for a defendant to knowingly . . . [p]ossess methamphetamine with intent to manufacture, deliver or sell methamphetamine." T.C.A. § 39-17-434(a)(4). This offense "is a Class B felony if the amount involved is point five (0.5) grams or more of any substance containing . . . methamphetamine." *Id.* § 39-17-417(c)(1). Furthermore, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419.

Here, in the light most favorable to the State, the evidence established that the defendant was in possession of at least 3.88 grams of methamphetamine—nearly eight times more than what a typical user smoked at one time—and $600 in cash. Furthermore, a small portion of the methamphetamine was packaged in a bag, which Deputy Steadman testified could indicate that the substance had already been "cut out" and weighed for resale. The amount of methamphetamine, the sum of cash found on the defendant, and the separately bagged substance were sufficient to support the jury's verdict that the defendant intended to sell the methamphetamine. The fact that the defendant was also in possession of items commonly associated with personal use of the drug does not preclude a finding that the defendant possessed the substance with the intent to sell it. Additionally, the jury was free to reject the defendant's argument that the $600 cash was money from his father to repay Ms. Richardson.

That being said, the proof adduced at trial was insufficient to support the defendant's conviction of driving on a revoked or suspended license. *See* T.C.A. § 55-50-504 (establishing the offense of driving a motor vehicle on "every way publicly maintained that is open to the use of the public for purposes of vehicular travel . . . at a time when the person's privilege to do so is cancelled, suspended, or revoked"). The State produced no evidence that the defendant's driver's license was suspended or revoked at the time of his arrest. To be sure, the evidence clearly established that the defendant was driving the vehicle when Deputy Steadman effectuated the traffic stop, but the jury heard no evidence regarding the status of the defendant's license. Deputy Steadman testified that he checked the defendant's driver's license but did not discuss the results of that search. Furthermore, the State did not offer into evidence a copy of the defendant's driving record. Because there is no evidence supporting the defendant's conviction of driving on a revoked or suspended license, we vacate that conviction and dismiss the charge.

*Conclusion*

Accordingly, we vacate the defendant's conviction of driving on a revoked or suspended license, reverse the defendant's conviction of simple possession of Alprazolam and remand for a new trial on that single charge, but otherwise affirm the trial court's judgment.

_____
JAMES CURWOOD WITT, JR., JUDGE

-11-